**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TSI PRODUCTS, INC.** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL CASE NO. 3:17-cv-02062** |
| | § | |
| **THE ARMOR ALL/STP PRODUCTS** | § | |
| **COMPANY,** | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

1.      Defendant The Armor All/STP Products Company ("AA/STP") unfairly competes with Plaintiff TSI Products, Inc. ("TSI") through widespread violations of the Lanham Action and infringement of Plaintiff's intellectual property.   AA/STP's actions complained of herein are grossly anticompetitive and constitute an attempt to maintain and extend its large market share and thereby prevent competitors from entering the market for the products referenced herein or gaining market share through fair competition. Plaintiff brings this action to protect its brands, intellectual property and right to fair, legal competition.

**I.      PARTIES**

2.      Plaintiff TSI Products, Inc. is a Texas corporation with a principal place of business in Arlington, Texas.

3.      Defendant The Armor All/STP Products Company is a Delaware corporation with a principal place of business at 44 Old Ridgebury Road, Danbury, Connecticut 06810.  Defendant is a subsidiary of Spectrum Brands Holdings, Inc.

4.      Defendant engages in business in Texas but has not registered with the Secretary of State.

5.      Defendant has not designated or maintained a resident agent for service of process in Texas.

6.      Defendant may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701 as its agent for service.

## II.      JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338 because this action arises under the Lanham Act.

8.      This Court may exercise specific jurisdiction over Defendant because it has sufficient minimum contacts with the forum such that exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice. Defendant purposefully availed itself of the privilege of doing business in the forum and there is a nexus between such acts and the asserted claims. Defendant has committed and continues to commit acts of trademark infringement and false advertising in the forum by selling products with infringing marks and false advertisement in the forum.[1] Defendant delivered products with false advertisement and infringing trademarks into the stream of commerce with the expectation that they would be purchased or used by consumers in the forum.

9.      Additionally, Defendant's predecessor company IDQ Inc.'s principal place of business was in Garland, Texas, and, until recently, Defendant's products sold using Plaintiff's marks were manufactured in Garland, Texas and distributed from Defendant's Garland, Texas warehouse. On

---

[1] Defendant sells its infringing "A/C Pro" products through numerous Dallas retailers. For example, a search for authorized retailers in the zip code 75202 on Defendant's A/C Pro website www.acprocold.com yields 15 retail stores in that zip code where Defendant's A/C Pro products may be purchased, including AutoZone, O'Reilly, and Wal-Mart.

information and belief, Defendant's predecessor entity manufactured, sold, and made branding decisions in Garland, Texas during a portion of the time period complained of herein.

10.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial number of the events and omission have occurred in this district. Defendant's infringing activity and false advertisement occurred in this district, and consumers were likely to be confused by such false advertisement in the district.

### III.     FACTS

#### A.     TSI Holds Rights in the AVALANCHE Brand

11.     Plaintiff TSI Products, Inc. ("TSI") designs, engineers, and packages automotive products in Texas and throughout the Unites States.  One of Plaintiff's brands is the AVALANCHE line of do-it-yourself auto refrigerant products, including the AC AVALANCHE and BLACK DIAMOND AVALANCHE products.

12.     Do-it-yourself refrigerant products permit car owners to recharge their air conditioner themselves and thereby avoid the expense and inconvenience of a professional mechanic.

13.     TSI has continuously sold refrigerant and associated products under the AVALANCHE brand since January 31, 2015.

14.     TSI has sold products nationwide under the AC AVALANCHE mark since its first use of that mark in January 2015.

15.     TSI holds trademark rights in the word mark AC AVALANCHE used in connection with refrigerants.

16.     TSI holds trademark rights, via an assignment, in the word mark AVALANCHE used in connection with refrigerants.

17.     The AVALANCHE word mark is registered under Registration No. 4,823,588 (the '588 registration).

18.     TSI holds trademark rights, via an assignment, in the word mark BLACK DIAMOND AVALANCHE used in connection with refrigerants.

19.     The BLACK DIAMOND AVALANCHE is registered under Registration Nos. 5,065,364 (the '364 registration).

20.     TSI likewise holds rights in the mountain logo, which features a stylized "A" in the shape of a mountain and stylized mountain imagery that appears behind the brand name, as follows:





21.     TSI has continuously used the mountain logo in connection with its sale of the AVALANCHE/AC AVALANCHE line of products since January 2015.

22.     Since January 2015, TSI has sold AVALANCHE/AC AVALANCHE refrigerants in packaging with a stylized mountain logo, as exemplified by the following images of its product packaging:



23.     The mountain logo reinforces the AVALANCHE/AC AVALANCHE brand because of the association with cold air.

24.     The mountain logo identifies TSI as the source of the products.

25.     TSI has amassed goodwill and brand recognition through its advertisement and use of this mountain logo in association with its refrigerant products.

26.     TSI has sold products nationwide in packaging using this stylized mountain logo.

27.     TSI has also distributed catalogs nationwide with images of its products in packaging using this mountain logo.

28.     TSI's website features the images of its products in packaging using the mountain logo.

### B.      Defendant Misuses Plaintiff's Trademark in Keyword Advertising

29.     Defendant AA/STP sells refrigerant products that compete with TSI's refrigerant products.

30.     On information and belief, AA/STP has a very significant market share, in excess of 85%, of the value-added, do-it-yourself automotive refrigerant market.

31.     AA/STP and TSI both sell their products to major automotive retailers, such as AutoZone.

32.     AA/STP is a direct competitor of Plaintiff.

33.     AA/STP sells refrigerant products under the A/C PRO brand.

34.     AA/STP sells refrigerant products under the brand name ARCTIC FREEZE.

35.     As of the date of this filing, AA/STP operates and controls the website, www.acprocold.com ("AC PRO Website").

36.     As of the date of this filing, AA/STP operates and controls the website, www.rechargeac.com ("Recharge AC Website").

37.     As of the date of this filing, AA/STP markets its A/C PRO and ARCTIC FREEZE brands on the AC Pro Website.

38.     As of the date of this filing, AA/STP markets its A/C PRO and ARCTIC FREEZE brands on the Recharge AC Website.

39.     AA/STP purchased "AC AVALANCHE" as a Google ad word.

40.     As of the date of this filing, a Google search for "AC AVALANCHE" yields a Google ad word advertisement for Defendant's AC Pro Website.

41.     This is reflected in the following screen shot:



42.     On information AA/STP's use of the AC AVALANCHE trademark in connection with the

Google ad campaign is likely to cause consumer confusion.

43.     The headline of the advertisement, "AC Avalanche – A/C Pro Saves You Time & Money,"

falsely suggests an affiliation between Plaintiff's AC AVALANCHE brand and products and the

A/C PRO brand and products.

44.     As of the date of this filing, when a user clicks on the advertising link, the consumer is connected to Defendant's webpage featuring a photo of ACP-100 A/C Pro Professional Formula R-134a Auto A/C Recharge with a gauge:



*See*   http://acprocold.com/product/acp-100-ac-pro/?gclid=EAIaIQobChMI5sCgzba31QIVgol-Ch3JIwLjEAAYASAAEgLRnvD_BwE.

45.     This webpage on the AC Pro Website features a video instructing consumers on how to recharge their air conditioner using the "AC Pro all in one solution," which requires "no additional tools."  *See*  https://youtu.be/oIgu9Ww3fOw  ("Video").

46.     The Video includes disclaimers about "what not to do."

47.     Defendant's disclaimers in the Video do not include any instructions regarding use of the AC PRO gauge with cars that have a BLOCK or TXV Valve.

48.     Many auto air conditioning systems ("AC systems") use a BLOCK or TXV valve, which can cause unusable pressure readings when using a gauge that only measures the pressure on the low side of the AC system.

49.     If the maximum pressure regulated by the BLOCK or TXV valve is below the suggested fill range of the gauge, the gauge will give an unusable reading when the suggested correct fill range exceeds the maximum pressure regulated by the BLOCK or TXV valve.

50.     A BLOCK or TXV valve regulates the flow of refrigerant into the evaporator.

51.     A BLOCK or TXV valve sets a maximum operating pressure at the evaporator outlet.

52.     Once the maximum operating pressure is reached, the BLOCK or TXV valve regulates the refrigerant flow to the low side of the AC system.

53.     When used on a vehicle with a BLOCK or TXV valve, a low-pressure-measuring gauge will only measure the amount of pressure after the BLOCK or TXV valve has regulated the refrigerant pressure.

54.     As the consumer adds more refrigerant, the pressure reading on the gauge will not increase past the maximum pressure regulated by the BLOCK or TXV valve.

55.     The gauge will give an unusable reading if the consumer adds a volume of refrigerant which exceeds the maximum pressure regulated by the BLOCK or TXV valve.

56.     If the suggested fill range of the gauge is above the maximum pressure regulated by the BLOCK or TXV valve, a consumer relying on the unusable gauge readings is likely to overcharge the AC system because the consumer will continue to add refrigerant mistakenly believing that the desired pressure has not been reached.

57.     The AC Pro gauge only measures the pressure on the low side of the AC system.

58.     The AC Pro gauge can provide unusable readings on cars with a BLOCK or TXV valve when the consumer adds a volume of refrigerant which results in pressure which exceeds the maximum pressure regulated by the BLOCK or TXV valve.

59.     If the suggested fill range of the AC Pro gauge is above the maximum pressure regulated by the BLOCK or TXV valve, a consumer relying on the unusable AC Pro gauge readings is likely to overcharge the AC system because the consumer will continue to add refrigerant mistakenly believing that the desired pressure has not been reached.

60.     Repairing overcharged AC systems can be very costly for consumers.

61.     Consumers with cars with a BLOCK or TXV valve have reported overcharging resulting from use of the AC Pro gauge.

62.     On information and belief, nothing on any AC Pro packaging or advertising tells consumers that the gauge may give unusable readings when used on cars with a BLOCK or TXV valve.

63.     On information and belief, nothing on any AC Pro packaging or advertising tells consumers that the use of the gauge on vehicles with a BLOCK or TXV valve may result in overcharging.

64.     Instead of a low-pressure-side gauge, some of Plaintiff's AC AVALANCHE products are sold with a Smart Clips, which instead of measuring the low-side-pressure of the AC system, measures the vent temperature of the air in the passenger compartment to target the correct fill.

65.     The AC AVALANCHE Smart Clips thus avoids the risk of overcharging posed by the use of AC Pro's gauge on cars with a BLOCK or TXV valve.

66.     AA/STP's use of the AC AVALANCHE mark in connection with its Google ad words campaign associates AC AVALANCHE with the AC Pro refrigerant and gauge.

67.     The association of AC AVALANCHE with the AC Pro refrigerant and gauge tarnishes the AC AVALANCHE brand by associating it with an inferior product.

C.      AA/STP Infringes on Plaintiff's Mountain Logo

68.     AA/STP has recently incorporated Plaintiff's mountain logo into its product packaging for some of its ARCTIC FREEZE products.

69.     Prior to 2017, Defendant did not utilize the mountain logo in its packaging of ARCTIC FREEZE products.

70.     The following photo depicts some of Defendant's ARCTIC FREEZE products as they were packaged prior to 2017:



71.     AA/STP began using the mountain logo in its packaging of ARCTIC FREEZE products in 2017.

72.     The following photos depicts some of Defendant's ARCTIC FREEZE products with 2017 packaging:



73.     The mountain logo used in the ARCTIC FREEZE packaging looks virtually identical to that used in Plaintiff's packaging.

| AC AVALANCHE Mountain Imagery | ARCTIC FREEZE Mountain Imagery |
|---|---|
|  |  |

74.     The mountain logo used in in the ARCTIC FREEZE products appears just behind the brand name, just as the mountain logo used in the AC AVALANCHE products appears just behind the brand name.

75.     On information and belief, AA/STP's use of the mountain logo in the packaging of its refrigerant products is likely to cause consumer confusion.

76.     AA/STP's use of the mountain logo in the packaging of its refrigerant products infringes TSI's mountain logo.

77.     On information and belief, AA/STP's use of the mountain logo causes customer confusion as to the source of goods.

78.     On information and belief, the AC PRO brand identifies Defendant's premium line of refrigerant products.

79.     On information and belief, the ARCTIC FREEZE brand identifies a line of refrigerant products inferior to Defendant's premium line of refrigerant products.

80.     On information and belief, AA/STP is infringing TSI's mountain logo on AA/STP products that are of lower quality than its AC Pro Brand.

81.     On information and belief, AA/STP's use of the mountain logo associates TSI's products with Defendant's lower-quality products.

82.     On information and belief, AA/STP knew of TSI's use of mountain logo in its packaging prior to incorporating the use of mountain logo in its ARCTIC FREEZE packaging.

###     D.     Defendant Makes the Unsubstantiated Claim that it is "#1 Rated Coldest Air"

83.     The A/C Pro packaging for its A/C Pro Professional Formula refrigerant claims that it is "#1 Rated Coldest Air" and "#1 Coldest Air" (the "Claims").

84.     The Claims appear on the AC Pro Website and the on the product packaging, as illustrated by the following photos:





85.    On information and belief, AA/STP has never conducted any test comparing refrigerant brands and products to determine which brand has the coldest air.

86.    On information and belief, there have never been any lab tests comparing the refrigerant brands and products to determine which brand has the coldest air.

87.    On information and belief, the A/C Pro Professional Formula refrigerant is not the "#1 Rated Coldest Air" or "#1 Coldest Air."

88.    Given two cans of equal volume (fluid ounces), one having only refrigerant and the other having a lesser amount of refrigerant but containing lubricant and additives also, the one having only refrigerant will give the coldest air.

89.    The A/C Pro Professional Formula refrigerant contains additives.

90.    The A/C Pro Professional Formula refrigerant contains lubricants.

91.    There are refrigerants sold in the United States which do not have lubricants or additives.

92.    On information and belief, AA/STP knew that that the A/C Pro Professional Formula is not the "#1 Rated Coldest Air" or "#1 Coldest Air" at the time Claims were made, and yet continues to make these false Claims to the present day.

## IV.    CAUSES OF ACTION

93.    All conditions precedent to Plaintiff's rights of recovery on all of the claims asserted herein have been performed or have occurred, or have been waived or excused.

94.    If and to the extent that they conflict, the allegations and causes of action asserted herein are pled in the alternative.

95.    The allegations set forth in Section III above are incorporated by reference in each cause of action below as though fully set forth therein

**COUNT 1: LANHAM ACT TRADEMARK INFRINGEMENT, 15 U.S.C § 1114**

96.    Defendant has infringed and continues to infringe on Plaintiff's registered AVALANCHE word mark by using it in keyword advertising to sell Defendant's refrigerant products.

97.    Defendant's unauthorized use of the AVALANCHE word mark in association with its products is likely to cause consumer confusion.

98.    Defendant's unauthorized use of the AVALANCHE word mark in association with its products is likely to deceive consumers into believing that Defendant is the source of Plaintiff's goods or that Plaintiff is the source of Defendant's goods.

99.    By using the AVALANCHE word mark in keyword advertising Defendant misappropriates the goodwill which Plaintiff has developed in the AVALANCHE word mark.

100.    Defendant's use of Plaintiff's AVALANCHE mark has been willful, deliberate, and knowing.

101.    The aforesaid acts of Defendant are likely to cause Plaintiff irreparable harm for which there is no adequate remedy at law, including substantial and irreparable injury to Plaintiff's business goodwill and reputation.

102.    Pursuant to 15 U.S.C. §§ 1114(1), 1116, and 1117(a) and as a result of the foregoing acts, Plaintiff is entitled to injunctive relief and recovery of actual damages, enhanced damages, costs, reasonable attorney's fees, and Defendant's profits.

**COUNT 2: LANHAM ACT UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**

103.    The AVALANCHE and AC AVALANCHE word marks, and the mountain logo are inherently distinctive marks that identify and distinguish Plaintiff as the source of its refrigerant products or, alternatively, have become distinctive by acquiring secondary meaning.

104.    Plaintiff holds nationwide rights in its AVALANCHE and A/C AVALANCHE word marks, and mountain logo through its widespread, continuous and extensive use of those marks in packaging and promoting their products.

105.    Defendant is using the marks in packaging its products and engaging in keyword advertising in a manner which is likely to cause consumer confusion as to the origin, source, affiliation, or sponsorship of the goods sold by Defendant.

106.    The aforesaid acts of Defendant constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

107.    Defendant committed the aforesaid acts with knowledge that such use is intended to deceive or cause confusion or mistake.

108.    The aforesaid acts of Defendant will cause irreparable harm for which there is no adequate remedy at law, including substantial and irreparable injury to Plaintiff's business goodwill and reputation.

109.    Pursuant to 15 U.S.C. §§ 1114(1), 1116, and 1117(a) and as a result of the foregoing acts, Plaintiff is entitled to injunctive relief and recovery of actual damages, lost profits, enhanced damages, costs, reasonable attorney's fees, and Defendant's profits.

## COUNT 3: LANHAM ACT TRADEMARK DILUTION BY BLURRING AND TARNISHMENT, 15 U.S.C. § 1125(c)

110.    The AVALANCHE word mark is famous and has name recognition in the refrigerant market. Plaintiff has continuously used the AVALANCHE marks to signify the source of its refrigerant and related products.

111.    Plaintiff has gained name recognition in its AVALANCHE products nationwide.

112.    Defendant used the AVALANCHE mark after it became famous.

113.     Defendant has caused and is causing a likelihood of dilution of the AVALANCHE mark and brand. Defendant has intentionally created an association with the non-AVALANCHE brand products that it sells and Plaintiff's products. Defendant has been using Plaintiff's mark, which is inherently distinctive or, in the alternative, has become distinctive by acquiring secondary meaning, and which is highly recognizable, to sell products of the same type. These acts have the effect of preventing consumers from being able to differentiate between the different sources of refrigerant products.

114.     Further, AA/STP has caused and is causing the likelihood of dilution of the AVALANCHE mark and brand by associating the AVALANCHE mark and brand with a product that Defendant knows is a defective product, the A/C Pro100, which is a product that AA/STP sells with a gauge that will not work properly with cars having a BLOCK or TXV valve.

115.     Defendant has committed the aforesaid acts with knowledge that the imitation is intended to deceive or cause confusion or mistake.

116.     Defendant willfully intended to trade on the recognition of Plaintiff's famous marks.

117.     The aforesaid acts of Defendant will cause irreparable harm for which there is no adequate remedy at law, and Plaintiff is accordingly entitled to an injunction against further diluting use of the AVALANCHE mark.

118.     Pursuant to 15 U.S.C. §§ 1114(1), 1116, and 1117(a) and as a result of the foregoing acts, Plaintiff is entitled to injunctive relief and recovery of actual damages, lost profits, damages reflecting the dilution of and loss of value of its AVALANCHE mark, enhanced damages, costs, reasonable attorney's fees, and Defendant's profits.

## COUNT 4: FALSE ADVERTISING UNDER 15 USC § 1125(a)

119.    Defendant made false or misleading statements of fact regarding its A/C Pro Professional

Formula refrigerant, specifically that it was the "#1 Rated Coldest Air" and "#1 Coldest Air" (the

"Claims").

120.    The aforesaid acts of Defendant constitute false advertising in violation of Section 43(a) of

the Lanham Act, 15 U.S.C. § 1125(a).

121.    The Claims are literally false or if true, are misleading and confusing.

122.    The Claims either deceived or had the capacity to deceive a substantial segment of potential

consumers into believing that the A/C Pro Professional Formula refrigerant is "#1 Rated Coldest

Air" and "#1 Coldest Air" and that refrigerants had been so rated.

123.    The deception is material in that the statements are likely to influence consumers'

purchasing decisions.

124.    The products are sold and marketed in interstate commerce.

125.    Defendant has committed the aforesaid acts with knowledge that the imitation is intended

to deceive or cause confusion or mistake.

126.    Plaintiff has been and is likely to continue to be injured as a result of the false and

misleading Claims.

127.    Plaintiff has been damaged by the reliance of distributors and consumers on the Claims.

On information and belief, the Claims have caused and will continue to cause customers to

purchase Defendant's products rather than purchasing Plaintiff's products.

128.    Defendant's false advertising has harmed Plaintiff's reputation, caused Plaintiff's lost sales

and revenue, and caused Plaintiff to incur high costs to compete with Defendant's falsely-

advertised products.

129.     Pursuant to 15 U.S.C. §§ 1114(1), 1116, and 1117(a) and as a result of the foregoing acts, Plaintiff is entitled to injunctive relief and recovery of actual damages, lost profits, loss of reputation and good will, expenses for combating customer confusion, expenses for corrective advertising, enhanced damages, costs, reasonable attorney's fees, and Defendant's profits.

## V.     JURY DEMAND

130.     Plaintiff hereby demands a trial by jury on all claims, issues and damages so triable.

## VI.     PRAYER

131.     WHEREFORE, by virtue of the unlawful conduct of Defendant as alleged in this Complaint, Plaintiff respectfully prays that:

(a) Defendant, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert and participation with it,

(1) be preliminarily and permanently enjoined and restrained from (i) using Plaintiff's marks and logos; (ii) making any Claim that the AC Pro Professional refrigerant is "#1 Coldest Air" or the #1 Rated Coldest Air;" and (iii) from otherwise unfairly competing with Plaintiff and from any attempt to retain any part of the goodwill misappropriated from Plaintiff;

(2) be ordered to recall all false advertising and require Defendant to issue notices to all current distributors and retailers of its products and all distributors with whom Defendant has business in the past twelve months;

(3) Be ordered to disseminate corrective advertising at Defendant's expense that informs consumers, the trade and the public at large of Defendant's unlawful conduct as complained of herein and of the judgment requiring Defendant to cease such unlawful conduct, and/or order Defendant to pay Plaintiff's costs in producing and disseminating such corrective advertising; and

(4) Be ordered to file with the Court and serve on Plaintiff within thirty days after issuance of any injunction a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction, pursuant to 15 U.S.C. § 1116.

(b) Plaintiff recover all actual, direct, special, consequential, exemplary, punitive, or statutory damages;

(d) Defendant be ordered to provide an accounting to determine Defendant's profits resulting from its activities and that such profits be paid over to Plaintiff;

(d) Plaintiff recover its reasonable attorney's fees, costs, pre-judgment and post-judgment interest; and

(e) Plaintiff be awarded such other and further relief to which it may be justly entitled.

Dated:  August 3, 2017                    Respectfully submitted,

**TAYLOR DUNHAM AND RODRIGUEZ LLP**
301 Congress Avenue
Suite 1050
Austin, Texas 78701
512.473.2257 (Phone)
512.478.4409 (Fax)

By:  /s/ David E. Dunham
     David E. Dunham
     State Bar No. 06227700
     Email:  ddunham@taylordunham.com
     Isabelle M. Antongiorgi
     State Bar No. 24059386
     Email:  ima@taylordunham.com
     Hannah M. Vahl
     State Bar No.24082377
     Email:  hvahl@taylordunham.com

**ATTORNEYS FOR PLAINTIFF**